JS 44 (Rev. 07/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

De Lage Landen Financial Services, Inc.

(b) County of Residence of First Listed Plaintiff: Chester
*(EXCEPT IN U.S. PLAINTIFF CASES)*

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Stark & Stark, P.C., Jennifer D. Gould, Esquire
777 Township Line Rd., Ste. 120, Yardley, PA 19067
(267) 907-9600

## DEFENDANTS

Regan Technologies Corporation

County of Residence of First Listed Defendant: New Haven
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☒ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
28 U.S.C. Section 1332

Brief description of cause:
Breach of Contract

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 771,434.85

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*: JUDGE ______ DOCKET NUMBER ______

DATE: 9/6/16

SIGNATURE OF ATTORNEY OF RECORD: [signature]

FOR OFFICE USE ONLY

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DE LAGE LANDEN FINANCIAL SERVICES, INC.<br>1111 Old Eagle School Road<br>Wayne, PA 19087<br>Plaintiff | ) | |
| v. | ) | NO. |
| REGAN TECHNOLOGIES CORPORATION<br>860 Main Street Extension<br>Wallingford, CT 06492<br>Defendant | ) | |

**COMPLAINT**

Plaintiff, De Lage Landen Financial Services, Inc., by and through its counsel, Stark & Stark, P.C., brings this action against Defendant, Regan Technologies Corporation and, in support thereof, avers as follows:

**PARTIES**

1. Plaintiff, De Lage Landen Financial Services, Inc. is a Michigan corporation with a place of business located at 1111 Old Eagle School Road, Wayne, Pennsylvania 19087 ("DLL" or "Plaintiff"). Plaintiff is a citizen of the Commonwealth of Pennsylvania.

2. Defendant, Regan Technologies Corporation ("Borrower" or "Defendant"), is a Connecticut corporation whose last known address to Plaintiff is860 N. Main Street Extension, Wallingford, CT. Defendant is a citizen of the State of Connecticut.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, excluding interest and costs.

4. Venue is proper in the Eastern District of Pennsylvania by virtue of 28 U.S.C. § 1391(b)(2) because a substantial part of the events and/or omissions giving rise to the claims occurred in the Eastern District of Pennsylvania.

5. Defendant also irrevocably waived any objection to the laying of venue of any action brought in the federal courts of the Commonwealth of Pennsylvania and any objection on the ground that an action in the federal courts of the Commonwealth of Pennsylvania has been brought in an inconvenient forum. See Loan Agreement (defined below), ¶18.

6. Additionally, Defendant consented to jurisdiction in the federal courts of the Commonwealth of Pennsylvania. See Loan Agreement, ¶18.

## FACTUAL BACKGROUND

7. On or about June 18, 2015, Borrower executed a certain Loan & Security Agreement (the "Loan Agreement") that was countersigned by DLL on July 29, 2015. A true and correct copy of the Loan Agreement is attached hereto, incorporated herein and marked as Exhibit "A."

8. On even date, Borrower executed a certain Promissory Note (the "Note") representing a loan from DLL to Borrower in the original principal amount of $1,083,743.27 (the

"Loan") to finance the acquisition of certain equipment set forth on Attachment A – Equipment Description to the Loan Agreement (collectively, the "Equipment"). See Exhibit "A."

9. The Loan Agreement and the Note are valid and binding written agreements.

10. The Note provides that Borrower will pay the Loan in twenty-four (24) equal, consecutive, monthly payments of $47,325.75.

11. On or about June 18, 2015, Borrower executed a certain Disbursement of Funds Approval ("Disbursement"). A true and correct copy of the Disbursement is attached hereto, incorporated herein and marked as Exhibit "B."

12. The Loan Agreement provides that Borrower's failure to pay any periodic installment payment or other amount due under the Loan Agreement or Note on or before the tenth (10th) day following the date when the same becomes due and payable is an Event of Default. See Loan Agreement, ¶15.

13. The Loan Agreement further provides that upon the occurrence of an Event of Default, DLL may recover from Borrower all unpaid periodic installment payments due under the Note, late charges, all remaining periodic installment payments due under the Note discounted at a rate of three (3%) percent per annum and interest at a rate of 2% per month. See Loan Agreement, ¶16.

14. The Loan Agreement further provides that Borrower shall also be liable for and shall pay to Plaintiff all expenses paid or incurred by DLL in connection with the enforcement of DLL's rights under the Loan Agreement and Note including attorney's fees and legal expenses. See Loan Agreement ¶16.

15.     Borrower failed to make the monthly payment due under the Note for the payment due May 1, 2016 and all monthly payments thereafter.

16.     The failure to make the monthly payments constitute Events of Default under the Loan Agreement.

17.     The total amount due has been accelerated and there is due pursuant to the Loan Agreement and Note as follows, plus interest from and including September 3, 2016, attorney's fees and costs:

| | |
|---|---|
| Past Due Payments (5/1/16-9/1/16) | $236,628.75 |
| Late Charges | 14,197.74 |
| Remaining Payments | 473,237.50 |
| Discount – 3% as per Loan Agreement | (6,442.74) |
| Interest from 5/11/16 through and including 9/2/16 plus $471.87 thereafter | 53,793.60 |
| TOTAL | $771,434.85 |

18.     Despite demand for immediate payment of the amounts due, Borrower has failed, neglected and refused to comply with such demand.

WHEREFORE, Plaintiff, De Lage Landen Financial Services, Inc., demands judgment in its favor and against Defendant, Regan Technologies Corporation, for the following relief:

(a)     compensatory damages; in the amount of $771,434.85;

(b)     interest at a rate of 2% per month from and including September 3, 2016 ($471.87 per diem);

(c)     reasonable attorney's fees and cost of suit; and

(d) such other and further relief as this Court deems appropriate.

**STARK & STARK, P.C.**

By: ______________________________

Jennifer D. Gould, Esquire
PA Attorney I.D. No. 80988
777 Township Line Road, Suite 120
Yardley, PA 19067
Phone (267) 907-9600
Facsimile (267) 907-9659
E-mail: jgould@stark-stark.com
Attorneys for Plaintiff

Date: September 6, 2016

# EXHIBIT "A"

# LOAN & SECURITY AGREEMENT ("AGREEMENT")

dll financial solutions partner

Type of Business: ☐ Individual ☐ Partnership ☑ Corporation ☐ LLC

**BORROWER**

Borrower Name (Exact Full Legal Name Required): REGAN TECHNOLOGIES CORPORATION
Address: 860 N. MAIN STREET EXT.
City: WALLINGFORD State: CT Zip: 06492
Phone Number: (203) 284-4120 Fax Number:
Contact Name: Title:

**LENDER**

Lender: De Lage Landen Financial Services, Inc.
Address: 1111 Old Eagle School Road
City: Wayne State: PA Zip: 19087
Equipment Address (if different): 860 N. MAIN STREET EXT.
City: WALLINGFORD State: CT Zip: 06492
County:

**EQUIPMENT INFORMATION**

| Year | Full Serial Number | Make | Model | Description |
|---|---|---|---|---|
| | | | | SEE ATTACHMENT A |
| | | | | |
| | | | | |

**FACTUAL BACKGROUND:** Borrower desires to obtain a secured loan from Lender to finance its acquisition of equipment (and/or to refinance existing equipment), and Lender is agreeable to making a secured loan to Borrower on the terms and conditions contained in this Agreement.

## TERMS & CONDITIONS

1. **THE LOAN AND LOAN REPAYMENT.** As requested by Borrower, Lender agrees to lend to Borrower the sum of $ 1,083,743.27 ("Loan"). Borrower agrees to repay (in advance/in arrears) Lender the Loan as provided in the Note below ("Note"), by paying Lender, over a 24 month period, commencing on the first or fifteenth day of a month (the "Commencement Date"), whichever day is the closest day following the date of disbursement by Lender to Borrower of the Loan funds (the "Funding Date"), unless such funds disbursement occurs on the first or fifteenth day of the month, it which case the Commencement Date shall be the same day of the month as the Funding Date. By way of example, if the Funding Date is the 7th, day of a month, the Commencement Date shall be the 15th day of such month, or if the Funding date is the 19th day of a month, the Commencement Date shall be the 1st day of the following month. If the Funding Date is not the first or fifteenth day of a month, interest as stated below ("Interim Loan Interest") on the Loan amount shall accrue from the Funding Date up to Commencement Date and shall be payable on the due date of the first Loan installment payment.

2. **DOCUMENTATION AND CERTAIN OTHER FEES.** Borrower agrees to pay to Lender a fee not to exceed $750.00 to reimburse Lender's expenses for the preparation and filing of all financing statements, for Lender's other documentation costs and for all ongoing administration costs during the term of this Agreement. Borrower also agrees to pay to Lender all of Lender's out of pocket expenses relating to the registration and titling of the Equipment.

3. **UNCONDITIONAL OBLIGATION TO PAY; LATE CHARGE.** All payments due under the Note and hereunder shall be paid to Lender or its assigns without notice or demand and without abatement, offset, defense or counterclaim, at Lender's principal office shown above, or such other place as Lender or its assignee may designate in writing to Borrower. Borrower's obligation to pay the Note installment payments and other payments due hereunder and under the Note shall be absolute and unconditional and shall not be affected by reason of (i) any defect in, lack of fitness for use of, damage to, loss of possession or use of or destruction of, all or any of the Equipment (as defined below) securing Borrower's obligations, (ii) the prohibition or other restriction against Borrower's use of said Equipment or (iii) for any other cause, it being the agreement of the parties that the Loan and any other amount payable by Borrower under the Note and hereunder shall continue to be payable in all events in the manner and at the times provided in this Agreement and the Note. Whenever any payment or other amount required hereunder is not made by Borrower within 5 days of its due date, Lender may, at its election, and subject to prior exercise of its right of acceleration, accept the payment in arrears and Borrower shall pay, as liquidated damages, a late charge calculated at the rate of five percent (5%) of each such defaulted payment, or $10.00, whichever is greater, but only to the extent permitted by law ("Overdue Rate"). Any amount received by Lender determined to be in excess of the highest rate of interest permitted by applicable law, shall be refunded to Borrower.

4. **SECURITY INTEREST; FINANCING STATEMENTS.** To secure payment when due (at maturity, by acceleration or otherwise) of the Loan, any interim fundings against the Loan and any additional or future advances, renewals, extensions and replacements thereto and any and all other present and future obligations of Borrower to Lender, whether direct or contingent or joint and several, Borrower hereby conveys, assigns, and grants to Lender a continuing first priority security interest in and to the equipment described in this Agreement, whether same is being financed hereunder and/or is serving as additional collateral for the Loan, including all present and future additions, attachments, replacements, accessions and accessories thereto (the "Equipment"), and all substitutions and cash and non-cash proceeds thereof, at any time arising, including all proceeds of insurance thereon; all of the above being collectively, referred to herein as the "Collateral". Lender is hereby authorized to file a financing statement and any amendments, continuation statements or termination statements or other documents it may deem necessary to protect its interest under this Agreement or the Note with respect to the Collateral without Borrower's signature or by executing Borrower's name thereto and for such limited purpose. Borrower grants Lender, and its agent(s), a power of attorney to execute any such financing statements or other documents. Notwithstanding the foregoing, Lender shall have no obligation to comply with any recording, re-recording, filing, refiling or other legal requirements, necessary to establish or maintain the validity, priority, or enforceability of, or Lender's right in and to the Collateral or any part thereof.

5. **PREPAYMENT PENALTY.** Should the Loan be paid in full prior to maturity, whether by reason of sale of the Equipment, refinancing, or otherwise, Borrower shall pay Lender (at the time of such payment) a "Prepayment Penalty". If the Loan is paid in full during the first year it is outstanding, the Prepayment Penalty shall be 3% of the outstanding Loan balance immediately prior to the prepayment. During the second year, the Prepayment Penalty shall be 2% and during the third year and thereafter, it shall be 1%.

6. **FINANCING AGREEMENT.** THIS AGREEMENT IS SOLELY A FINANCING AND SECURITY AGREEMENT. BORROWER ACKNOWLEDGES THAT THE EQUIPMENT HAS BEEN OR WILL BE SELECTED AND ACQUIRED SOLELY BY BORROWER AND THAT LENDER HAS NOT AND DOES NOT MAKE ANY REPRESENTATIONS AND/OR WARRANTY, EXPRESS OR IMPLIED, WITH RESPECT TO ITS CONDITION, MERCHANTABILITY, SUITABILITY, CAPACITY OR FITNESS FOR ANY PARTICULAR PURPOSE.

7. **REPRESENTATIONS AND WARRANTIES.** Borrower warrants, represents and agrees as follows: (i) Borrower has full power and authority to execute, deliver and perform its obligations under this Agreement and the Note, (ii) the execution and delivery of this Agreement and the Note have been authorized by all requisite corporate (or partnership)(or limited liability company) action; (iii) the execution, delivery and performance of this Agreement and the Note do not and will not constitute a breach, default or violation of or under Borrower's Articles of Incorporation, by laws (partnership agreement)(or limited liability company operating agreement) or any other agreement, law, order, lease, judgment or injunction to which it is a party or may be bound; (iv) the Equipment is, or on the Funding Date will, be lawfully owned by Borrower, free and clear of all liens, encumbrances and security interests and Borrower will warrant and defend title thereto against all claims; (v) Borrower has not granted and will not grant to any one other than Lender a security interest in the Equipment and no financing statement or other instrument affecting the Equipment nor rights therein, bearing the signature of, or otherwise authorized by, Borrower is on file in any public office; (vi) the Equipment shall at all times remain personal property and be retained in Borrower's possession at its principal address set forth above (or, if so indicated, at the Equipment Location set forth above); (vii) the Equipment shall be used for business purposes; and (viii) if the Equipment is attached to real estate or if it is or may become subject to a prior interest in favor of a party having any interest in the real estate, Borrower will on Lender's demand furnish Lender with a writing by which any and all parties having such prior interest, waive or subordinate their rights and priorities to or in favor of Lender's security interest provided herein.

8. **INSURANCE.** Borrower shall, at its sole cost and expense, procure and maintain, so long as Borrower is indebted to Lender on the Loan or on any other liability, property damage and third party liability insurance with respect to the Equipment in such form and substance as required by Lender from time to time and with such insurance carriers as reasonably acceptable to Lender, but in any event insuring the Equipment against all risks of physical loss, theft, damage and destruction with extended coverage in an amount equal to the greater of (a) the amount of the Loan or (b) the full replacement value (new) of the Equipment, all with Lender (and its assigns) as sole loss payee(s) as their interest may appear. Borrower shall deposit said policy or policies or duplicates thereof or certificates of insurance with Lender and said policies shall provide, unless otherwise required in writing by Lender, that the policies may not be canceled or altered without at least thirty (30) days prior notice to Lender and that the coverage shall not be invalidated against Lender because of any violation of any condition or warranty contained in any policy or application therefor by Borrower or by reason of any action or inaction of Borrower. If Borrower does not provide Lender evidence of insur-

(Terms and Conditions continued on the reverse or 2nd page of this Agreement.)

**PROMISSORY NOTE**

FOR VALUE RECEIVED, REGAN TECHNOLOGIES CORPORATION ("Borrower") promises to pay to the order of De Lage Landen Financial Services, Inc. ("Lender") at its office at 1111 Old Eagle School Road, Wayne, Pennsylvania 19087 in immediately available and lawful money of the United States, the principal sum of $ 1,083,743.27 and to pay interest in like money on the unpaid principal amount thereof to maturity at the rate of interest of 4.76 % per annum, computed on the basis of 360-day year consisting of twelve 30-day months. Principal and interest hereunder shall be paid as follows: ☑ in 24 equal, consecutive, monthly payments of $ 47325.75 with the first such installment payment due one month following the Commencement Date as defined in Section 1 above and the remaining installment payments due on the same day of each and every month thereafter until fully paid, or ☐

Each principal and interest installment, when paid, shall be first applied to interest payment on the unpaid Note principal amount, and the balance thereof to Note principal payment. A late charge on any overdue principal of, and Prepayment Penalty, if any, on, this Note shall be payable as specified in Section 3 of the below defined Loan Agreement. Interim Loan Interest on the Loan principal amount shall be due and payable on the first installment payment due date.

If any holder institutes any action for Note enforcement or collection, there shall be immediately due and payable, in addition to the then unpaid principal balance hereof and any accrued interest, any late charges and all costs and expenses of such action including attorney's fees, in addition to all other sums, if any, due as provided in the Loan and Security Agreement, of even date herewith, between Borrower and Lender ("Loan Agreement"). This Note shall be governed by, and construed and interpreted in accordance with, the laws of the Commonwealth of Pennsylvania, without regard to its choice of law principles. Capitalized terms used herein, and not defined herein, shall have the meanings set forth in the Loan Agreement. Reference is made to the Loan Agreement for a description of the provisions, which hereby are incorporated herein by reference, upon which the Note is issued and secured, and the nature and extent of the holder's security and rights. Borrower hereby waives presentment, demand for payment, notice of dishonor, and any and all other notices or demands in connection with this Note's delivery, acceptance, performance, default or enforcement.

Borrower Signature [signature] Title CFO Date JUNE 18, 2015

ance acceptable to Lender, Lender has the right, but not the obligation, to obtain such insurance for all or any portion of the term of the Loan from an insurer of Lender's choice, including an insurer that is an affiliate of Lender. In the event that Lender does obtain such insurance, Borrower agrees to pay an insurance fee ("Insurance Charge") to Lender (which may include a profit) in addition to each payment due from Borrower.

9. **USE, REPAIRS, LOSS AND DAMAGE.** Borrower agrees to maintain the Equipment in good condition and repair and in accordance with the manufacturer's instructions, manuals and warranties (if any), and the requirements of any applicable insurance and other applicable rules and regulations. Borrower shall pay for all fuel, service, inspection, overhaul, replacements, substitutions, materials and labor necessary or desirable for the proper use, repair, operation and maintenance of the Equipment. All risks of loss, theft, damage or destruction of the Equipment shall be borne by Borrower and Borrower shall promptly notify Lender in writing of any such loss, theft, damage or destruction. In the event of any damage to the Equipment (unless the same is damaged beyond repair) Borrower shall, at its expense, place the same in good repair, condition and working order. If the Equipment, or any portion thereof, is determined by Lender to be lost, stolen or damaged beyond repair, or should the Equipment, or any portion thereof, be confiscated, seized or the use and title thereof requisitioned to someone other than Borrower, Borrower shall immediately pay to Lender, in addition to unpaid periodic installment payments on the Loan, other unpaid sums due hereunder and late charges then past due, an amount equal to the then remaining periodic installment payments to become due on the Note, discounted to present value at the lesser of (i) a per annum interest rate equivalent to that of a U.S. Treasury constant maturity obligation (as *reported by the U.S. Treasury Department) that would have a repayment term equal to the remaining term of the Loan,* all as reasonably determined by Lender; or (ii) 3% per annum, but only to the extent permitted by law, less the net amount of the recovery, if any, actually received by Lender from insurance on the Equipment.

10. **TAXES AND OTHER CHARGES.** Borrower agrees to pay promptly when due, and indemnify and hold harmless Lender from, all registration, recording, title, license and other fees, assessments and sales, use, gross receipts, ad valorum, property and any and all other taxes imposed by any State, Federal, local or foreign government upon or with respect to this Agreement and the Note or upon or with respect to the ownership, shipment, delivery, use or operation of the Equipment or any other Collateral or upon or measured by any payments due hereunder or under the Note (other than taxes on or measured solely by the net income of Lender) and any fines, penalties and interest thereon.

11. **BORROWER'S ADDITIONAL COVENANTS.** Borrower hereby agrees and covenants as follows: (i) except for the security interest granted hereby, Borrower shall keep the Equipment free and clear of any security interest, lien or encumbrance and shall not sell, lease, assign (by operation of law or otherwise), exchange or otherwise dispose of any of the Equipment, (ii) at the request of Lender, Borrower will affix conspicuous tags or plates on the Equipment containing a notation that Lender has a security interest therein and will join Lender in execution of one or more financing statements and continuation statements pursuant to the Uniform Commercial Code to establish and maintain its security interest in the Collateral, in form satisfactory to Lender, and will pay any filing fees and/or costs with respect thereto and for lien searches, (iii) Borrower will immediately notify Lender in writing of any change in Borrower's place(s) of business or Equipment location or the adoption or change of any trade name or fictitious business names and will execute any additional financing statements as Lender may request to perfect and maintain its security interest, but such notice shall not be deemed an authorization to move the Collateral without the prior written consent of Lender, (iv) if any part of the Collateral becomes subject to a certificate of title law, Borrower will cause Lender's security interest to be noted thereon and promptly deliver such certificate of title to Lender, (v) Borrower will allow Lender and its representatives free access to the Collateral at all times during normal business hours, for purposes of inspection and repair and, following an Event of Default, Lender shall have the right to demonstrate and show the Collateral to others and (vi) Borrower will furnish to Lender (and will cause any guarantor of Borrower's obligations hereunder to furnish to Lender) upon Lender's request its certified financial statements prepared by an independent certified public accountant within ninety (90) days after the close of its fiscal year which shall be prepared in accordance with generally accepted accounting principals and all other financial information and reports that Lender may from time to time reasonably request, including income tax returns of Borrower and any guarantor of Borrower's obligations hereunder.

12. **BORROWER'S FAILURE TO PAY TAXES, INSURANCE, ETC.** Should Borrower fail to make any payment or do any act as herein provided (including, but not limited to payment of taxes or for insurance), Lender shall have the right *but not the obligation, and without releasing Borrower from any obligation hereunder, to make or do the same, and to* pay any sum due in connection therewith or to contest or compromise any encumbrance, charge or lien and in exercising any such rights, incur any liability and expend whatever amounts in its absolute discretion it may deem necessary therefor. All sums so incurred or expended by Lender, plus, in the case of any amounts described in Section 10 hereof, a fee for Lender collecting and administering any such amounts and remitting them to the appropriate authorities, shall be payable by Borrower on demand with interest at the rate of two (2%) percent per month or the highest rate permitted by applicable law, whichever is lower.

13. **CROSS COLLATERALIZATION.** As additional collateral security for Borrower's obligations hereunder, Borrower grants to Lender a further security interest in all machinery, equipment, goods and other collateral covered by any other loan and security agreement, note, other agreement or lease (collectively the "other agreements") between Borrower and Lender whether such other agreements are now in existence or hereafter come into existence and Borrower assigns to Lender as security for its obligations hereunder, all of its rights, title and interest in and to any surplus money to which Borrower may be entitled upon the sale of the machinery, equipment, goods and other collateral covered by such other agreements. Anything above to the contrary notwithstanding, the benefit of the foregoing cross collateralization shall apply for the benefit of Lender and any assignee holding this Agreement and the Note only to the extent that Lender or such assignee is also the holder of such other agreements or one or more of them.

14. **INDEMNITY.** Borrower assumes liability for and agrees to indemnify, defend, protect, save and keep Lender harmless from and against costs, expenses and disbursements, including court costs and legal expenses of whatever kind and nature, imposed on, incurred by or asserted against Lender (whether or not also indemnified against by any other person) in any way relating to or arising out of this Agreement and/or the Note or the manufacture, financing, ownership, delivery, possession, use, operation, condition or disposition of the Equipment by Borrower, including, without limitation, any claim alleging latent and other defects, whether or not discoverable by Lender or Borrower, and any other claim arising out of strict liability in tort, whether or not in either instance relating to an event occurring while Borrower remains obligated under this Agreement and the Note, and any claim for patent, trademark or copyright infringement. Each party agrees to give the other notice of any claim or liability hereby indemnified against promptly following learning thereof. The fact that a claim for which Lender is entitled to indemnity under this Section is asserted after the termination of this Agreement and/or the Note shall not release Borrower from its indemnity obligations and this covenant of indemnity shall survive the termination of this Agreement and/or the Note.

15. **DEFAULT.** The occurrence of any one of the following shall constitute an Event of Default hereunder: (i) Borrower fails to pay any periodic installment payment or other amount due hereunder or under the Note on or before the tenth (10th) day following the date when the same becomes due and payable, (ii) Borrower removes, sells, transfers, encumbers or parts with possession of the Equipment or any items thereof or attempts to do any of the foregoing; (iii) Borrower fails to obtain or maintain in force the required insurance on the Equipment in compliance herewith; (iv) any representation or warranty made by Borrower herein or in any other agreement between the parties or in any statement given to Lender shall be materially untrue; (v) Borrower shall fail to observe or perform any of the other obligations required to be observed or performed by Borrower hereunder or under the Note, or under any other obligation or indebtedness of Borrower to Lender otherwise owing or due by Borrower to Lender in any other agreement now or hereafter executed between the parties hereto, and such failure shall continue uncured for twenty (20) days after written notice thereof to Borrower; (vi) Borrower shall (a) fail to pay any indebtedness for borrowed money (other than the Loan) of Borrower, or any interest or premium thereon, when due, (whether on scheduled maturity, required prepayment, acceleration, demand or otherwise), or (b) fail to perform or observe any term, covenant, or condition on its part to be performed or observed under any agreement or instrument relating to such indebtedness, when required to have been performed or observed, if the effect of such failure to perform or observe is to accelerate or permit the acceleration of such indebtedness, or if any such indebtedness shall be declared to be due or payable or required to be prepaid (other than by a regularly scheduled required prepayment prior to the stated maturity thereof), (vii) if Borrower leases the premises where the Equipment is located, a breach of such lease by Borrower and the commencement of an action by the landlord to evict Borrower or to repossess the premises, (viii) Borrower or any guarantor of Borrower's obligations hereunder sells, leases or disposes of any of its assets except in the ordinary course of its business and except for the disposition of any obsolete or retired property not useful to Borrower, (ix) Borrower or any guarantor of Borrower's obligations hereunder ceases doing business as a going concern, makes an assignment for the benefit of creditors, admits in writing its inability to pay its debts as they become due, files a voluntary petition in bankruptcy, is adjudicated a bankrupt or an insolvent, files a petition seeking for itself any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar arrangement under any present or future statute, law or regulation or files an answer admitting the material allegations of a petition filed against it in any such proceeding, consents to or acquiesces in the appointment of a trustee, custodian, receiver or liquidator of it or of all or any substantial part of its assets or properties, or if it shall take any action looking to its dissolution or liquidation, or an order for relief is entered under the United States Bankruptcy Code against Borrower or any guarantor of Borrower's obligations hereunder, (x) within sixty (60) days after the commencement of any proceedings against Borrower or any guarantor of Borrower's obligations hereunder seeking reorganization, arrangement, readjustment, liquidation, dissolution or similar relief under any present or future statute, law or regulation, such proceeding shall not have been dismissed, or if within sixty (60) days after the appointment without Borrower's or any guarantor of Borrower's obligations hereunder acquiescence of any trustee, custodian, receiver or liquidator of it or of all or any substantial part of its assets and properties, such appointment shall not be vacated, (xi) Borrower or any guarantor of Borrower's obligations hereunder consolidates with or merges into any other entity or Borrower's stockholders or partners sell all or substantially all of their stock or partnership interests, or (xii) the death of an individual Borrower or an individual guarantor of Borrower's obligations hereunder.

16. **REMEDIES.** Upon the occurrence of any Event of Default, Lender shall have the right to recover from Borrower, as liquidated damages for loss of a bargain and not as a penalty, a sum equal to the aggregate of the following: (a) all unpaid periodic installment payments due under the Note and other sums due under the Note and this Agreement to the date of default plus late charges, if any, (b) all remaining periodic installment payments due under the Note, discounted to the date of default at the lesser of (i) a per annum interest rate equivalent to that of a U.S. Treasury constant maturity obligation (as reported by the U.S. Treasury Department) that would have a repayment term equal to the remaining term of the Loan, all as reasonably determined by Lender; or (ii) 3% per annum, but only to the extent permitted by law, (c) charge you a return-check or non-sufficient funds charge ("NSF Charge") of $25.00 for a check that is returned for any reason, and (d) interest at the rate of two percent (2%) per month on the total of (a) plus (b) from the date of default or the highest rate permitted by applicable law, whichever is lower. In addition, Lender shall have the right to recover from Borrower any expenses paid or incurred by Lender in connection with the enforcement of its rights under this Agreement and the Note and the repossession, holding, repair, preparing for sale and subsequent sale, lease or other disposition of the Collateral including attorneys fees and legal expenses (collectively "Repossession Expenses"). *In addition, Lender shall have all of the rights and remedies of a Secured Party under the Uniform* Commercial Code and Lender is hereby authorized and empowered, with the aid and assistance of any person or persons, to enter any premises where the Collateral or any part thereof is, or may be placed, and to assemble and/or remove same and/or to render it unusable and sell and dispose of such Collateral, with or without notice, at one or more public or private sales on your premises or elsewhere. The proceeds of each such sale shall be applied by Lender toward the payment of the Repossession Expenses, the liquidated damages specified above and other indebtedness secured hereby. Should the proceeds of any such sale be insufficient to fully pay all the items above mentioned, Borrower hereby covenants and agrees to pay any deficiency to Lender. YOU agree that if notice of sale is required by law to be given, 10 days' notice will constitute reasonable notice. Lender may require Borrower to assemble the Collateral and make it available to Lender at a place to be designated by Lender that is reasonably convenient to both parties. All rights and remedies hereunder are cumulative and not exclusive of any rights or remedies provided by law and may be exercised singly or concurrently. Lender shall not by any act, delay, omission, failure to act, or otherwise be deemed to have waived any right, power, privilege or remedy hereunder, and no waiver whatever shall be valid unless in writing signed by Lender, and then only to the extent therein set forth; nor shall any single or partial exercise of any right, power, privilege or remedy hereunder preclude any further exercise of any right, power, privilege or remedy. A waiver by Lender of any right or remedy under the terms of this Agreement and/or the Note, on any one occasion, shall not be construed as a bar to any right or remedy that Lender would otherwise have had on any future occasion. No agreement unless in writing and signed by Lender, and no course of dealing between Borrower, endorser(s) or guarantor(s) hereof and Lender shall be effective to change or modify or discharge in whole or in part, this Agreement and/or the Note.

17. **ASSIGNMENT.** Lender may assign or otherwise transfer this Agreement and/or the Note, in whole or in part, and any and all of Lender's right, title and interest hereunder and therein and in the Collateral, including the right to receive all amounts payable hereunder and/or under the Note or grant participations with respect thereto without notice to or consent from Borrower. In the event of any such assignment, the right of the assignee to receive all amounts payable hereunder and under the Note as well as any other right of the assignee shall not be subject to any defense, set-off or counterclaim which Borrower may have against Lender although any claim Borrower may have against Lender shall be preserved and may be separately pursued against Lender. Upon Lender giving notice to Borrower of any such assignment, Borrower shall promptly acknowledge its obligations hereunder and under the Note to such assignee, and shall comply with the written directions or demands of such assignee and shall make all payments due hereunder and under the Note as such assignee may direct in writing. Following any assignment the term "Lender" shall be deemed to include or refer to Lender's assignee, but no such assignee shall be deemed to assume any obligation or duty imposed upon Lender hereunder and Borrower shall look only to Lender for performance thereof. As used in this *Section, "assign" shall be deemed to include a pledge, sale of, or grant of a mortgage on, or a security interest in, any* of the Collateral or this Agreement or the Note by Lender and the term "assignee" shall be deemed to refer to the recipient of such pledge, sale, mortgage or security interest. This Agreement and the Note and Borrower's rights and obligations herein and therein shall not be transferable or assignable by Borrower without Lender's express prior written consent and any such purported assignment by Borrower without such consent shall be null and void.

18. **GENERAL PROVISIONS.** THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HERETO SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE COMMONWEALTH OF PENNSYLVANIA, WITHOUT GIVING EFFECT TO PENNSYLVANIA CHOICE OF LAW PRINCIPLES. Borrower hereby (i) consents and agrees that (and hereby submits to) non-exclusive jurisdiction, personal or otherwise, over Borrower and the Collateral shall be with the courts of the Commonwealth of Pennsylvania or the Federal District Court for the Eastern District of Pennsylvania, solely at Lender's option, with respect to any provision of this Agreement and the Note; (ii) agrees that all claims in respect of any such action or proceeding may be heard and determined in such courts; (iii) irrevocably waives (to the extent permitted by applicable law) any objection which it now or hereafter may have to the laying of venue of any such action or proceeding brought in any of the foregoing courts, and any objection on the ground that any such action or proceeding in any such court has been brought in an inconvenient forum and (iv) agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner permitted by law. BORROWER AND LENDER HEREBY WAIVE TRIAL BY JURY. This Agreement may not be changed, modified or discharged on behalf of Lender, in whole or part, and no right of Lender may be waived except by a writing signed by a duly authorized officer of Lender. Borrower shall execute such other documents and shall otherwise cooperate with Lender as Lender reasonably requires to effectuate the transactions contemplated hereby. In the event that any word, sentence, paragraph, section or article of this Agreement is found to be void or voidable, by a court of competent jurisdiction, the balance of this Agreement shall nevertheless be legal and binding with the same force and effect as though the void or voidable parts were deleted. Lender is authorized and empowered to date this Agreement and the Note and any schedule(s) hereto or thereto and to fill in blank spaces in accordance with the terms of the transaction, including, but not limited to inserting serial numbers and equipment descriptions on the first page hereof and the assignment of an account number. Notices hereunder to Borrower and any guarantor(s) shall be in writing and shall be deemed given when personally delivered or when sent by facsimile to the party's facsimile number or three (3) days after having been mailed to said party or parties at the address specified above or such new address as to which a party may advise Lender. Notices to Lender shall only be deemed effective if sent by postage paid certified mail to the address specified above or such new address as to which Lender shall have provided notice. The section captions are for convenience and are not a part of the Agreement. This Agreement shall be binding upon and enure to the benefit of the heirs, executors, administrators, successors and permitted assigns of the parties. THIS AGREEMENT AND ANY OTHER WRITTEN AGREEMENTS EXECUTED SIMULTANEOUSLY HEREWITH SUPERSEDE ANY PRIOR PROPOSAL LETTERS, COMMITMENT LETTERS OR NEGOTIATIONS AND THERE ARE NO ORAL COVENANTS OR AGREEMENTS. You agree that a facsimile copy of the Agreement and the Note contained therein with facsimile signatures may be treated as an original and will be admissible as evidence of the Agreement and the Note.

**BORROWER SIGNATURE**

| Field | Entry | |
|---|---|---|
| Signature | [signature] | Executed Date JUNE 18, 2015 |
| Print Name | Walter Andres | |
| Title | CFO | |
| For | REGAN TECHNOLOGIES CORPORATION | |

**LENDER SIGNATURE**

| Field | Entry | |
|---|---|---|
| Signature | [signature] | Date 7/29/15 |
| Print Name | Steven Barkow | |
| Title | R&FA | |
| For | **DE LAGE LANDEN FINANCIAL SERVICES, INC.** | |

08MHDOC164v2

©2015 All Rights Reserved. Printed in the U.S.A. 08MHDOC164v2 3/15

# ATTACHMENT A — EQUIPMENT DESCRIPTION

Attachment forming part of the Loan & Security Agreement by and between DE LANDEN FINANCIAL SERVICES, INC. ("Lender") and REGAN TECHNOLOGIES CORPORATION ("Borrower").

EQUIPMENT INFORMATION:

86 VF4156001BU VMAX 40K 4G 15K 600GB DRIVE UPG
28 VF4F12001BU VMAX 40K 4G FLASH 200GBDRIVE UPG
1 DRIVEPACK-200 200 DRIVE BULK PACK SHIPPING CONTAINER
1 SYMM-LS SYMM LICENSE SOLUTION
1 457-100-904 ENGINUITY FOR VMAX 40K CAP UPG LICENSE
1 457-100-909 SYMM MGMT SUITE FOR 40K CAP UPG LIC
1 457-100-918 TF REP SUITE FOR VMAX 40K CACHE OPT OUT
1 457-100-920 TF REP SUITE FOR VMAX 40K REG UPG LIC
7 456-000-725 TF REP SUITE 40K REGISTERED 41-60TB
50 456-000-641 ENGINUITY FOR 40K NON-SATA 251-400TB
50 456-000-674 SYMM MGMT SUITE 40K NON-SATA 251-400TB
1 457-101-382 SRMSUITE 40K CAP UPG =IC
50 456-105-361 SRMSUITE 40K 251-400TB =CB
1 PSUPGD-VMAX VMAX UPGRADE
1 M-PRESW-E12 PREMIUM SOFTWARE SUPPORT
1 PS-BAS-INCLUP INSTALLATION VPLEX CLUSTER UPG QS
1 M-PRESW-015 PREMIUM SOFTWARE SUPPORT
1 VS-MET-PUPG VPLEX METRO UPG LICENSE
17 VS-MET-T5LIC VPLEX METRO 61-100 TB
1 VS-GSN-PUPG VPLEX GEOSYNCHRONY CAPACITY UPGRADE
17 VS-GSN-T5LIC VPLEX GEOSYNCHRONY 1TB (61-100TB)
1 PS-BAS-INCLUP INSTALLATION VPLEX CLUSTER UPG QS
1 M-PRESW-015 PREMIUM SOFTWARE SUPPORT
1 VS-MET-PUPG VPLEX METRO UPG LICENSE
17 VS-MET-T5LIC VPLEX METRO 61-100 TB
1 VS-GSN-PUPG VPLEX GEOSYNCHRONY CAPACITY UPGRADE
17 VS-GSN-T5LIC VPLEX GEOSYNCHRONY 1TB (61-100TB)
2 VNX6GSDAE15F VNX 15X3.5 IN 6GB SAS EXP DAE-FLD INST
29 VX-VS15-600U VNX 600G 15K UPG DRV-15X3.5IN DAE/DPE
1 PS-BAS-UPDAEB STANDARD DAE/DISK UPGRADE QUICKSTAR
1 PS-BAS-UPDAE STANDARD DAE/DISK UPGRADE MODULE
1 M-PRESW-001 PREMIUM SOFTWARE SUPPORT
18 VNXOEPERFTBU VNX OE PERF TIER/TB FOR VNX55/57/75-UPG
2 VNX6GSDAE15F VNX 15X3.5 IN 6GB SAS EXP DAE-FLD INST
29 VX-VS15-600U VNX 600G 15K UPG DRV-15X3.5IN DAE/DPE
1 PS-BAS-UPDAEB STANDARD DAE/DISK UPGRADE QUICKSTAR

BORROWER SIGNATURE
Borrower: REGAN TECHNOLOGIES CORPORATION
Signature: [signature]
Print Name: Walter V. Andrea
Title: CFO
Date: 6-18-15

LENDER ACCEPTANCE
Lender: DE LANDEN FINANCIAL SERVICES, INC.
Signature: [signature]
Print Name: Steve Bashaw
Title: R&FA
Date: 7/29/15

06MHDOC086D

©2006 All Rights Reserved Printed in the U.S.A. 06MHDOC086D 5/06

# ATTACHMENT A — EQUIPMENT DESCRIPTION

Attachment forming part of the Loan & Security Agreement by and between DE LANDEN FINANCIAL SERVICES, INC. ("Lender") and REGAN TECHNOLOGIES CORPORATION ("Borrower").

**EQUIPMENT INFORMATION:**

1 PS-BAS-UPDAE STANDARD DAE/DISK UPGRADE MODULE
1 M-PRESW-001 PREMIUM SOFTWARE SUPPORT
18 VNXOEPERFTBU VNX OE PERF TIER/TB FOR VNX55/57/75-UPG
6 PS-BAS-PMBLK COMMERCIAL PMGMT 4HRS QS
6 PS-BAS-SABLK COMMERCIAL SA 4HOURS QS
4 PS-ZN3-BRRES3 3 MONTH BRS RESIDENCY
5 CE-LGSUBCUS01 CUSTOMER SUB EXPIRE 1YR FROM INV DATE
2 PS-BAS-SRMIIMP Introductory Implementation for ViPR SRM
1 PS-BAS-SRMAIMP Imp for ViPR SRM Oper Readiness Add-on
1 456-105-285 SRMSUITE VNX TIER 4 =IC
1 M-PRESW-001 PREMIUM SOFTWARE SUPPORT
1 SRMST-SITE SRST SITE; SERVER BASE =IA
1 456-105-285 SRMSUITE VNX TIER 4 =IC
1 M-PRESW-001 PREMIUM SOFTWARE SUPPORT
1 SRMST-SITE SRST SITE; SERVER BASE =IA
1 X02-012-400-E-U XTREMIO 12X400GB FLASH DRV ENC UP
1 PS-BAS-XTHBEX 10TB Starter Brk 5TB Expansion Disk Inst
1 X02-012-400-E-U XTREMIO 12X400GB FLASH DRV ENC UP
1 PS-BAS-XTHBEX 10TB Starter Brk 5TB Expansion Disk Inst
20 456-105-064 Pivotal HD Enterprise SUBSC SVR=IA
17 456-105-066 Pivotal ADV Database SVCS SUBSC SVR=IA
1 456-105-067 Pivotal Command Center Perp SVR=IA

**BORROWER SIGNATURE**

Borrower: REGAN TECHNOLOGIES CORPORATION
Signature: [signature]
Print Name: Walter V. Andrea
Title: CFO
Date: 6-18-15

**LENDER ACCEPTANCE**

Lender: DE LANDEN FINANCIAL SERVICES, INC.
Signature: [signature]
Print Name: Stan Barhaw
Title: B+FA
Date: 7/29/15

06MHDOC086D

©2006 All Rights Reserved. Printed in the U S A. 0MHDOC086D 5/06

# EXHIBIT "B"

# DISBURSEMENT OF FUNDS APPROVAL

The undersigned hereby authorizes DE LANDEN FINANCIAL SERVICES, INC. ("Lessor") to disburse funds in the amount of U.S. $ 1,083,743.27 directly to TECH DATA pursuant to the terms of the LOAN AND SECURITY AGREEMENT dated JUNE 18, 2015 between Lessor and REGAN TECHNOLOGIES CORPORATION ("BORROWER").

| SIGNATURE | |
|---|---|
| | For<br>REGAN TECHNOLOGIES CORPORATION |
| | Authorized Signature [signature] |
| | Date 6-18-15 |

05MHDOC054W

©2011 All Rights Reserved. Printed in the U.S.A. 05MHDOC054W 11/11

UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.**

Address of Plaintiff: 1111 Old Eagle School Road, Wayne, PA 19087

Address of Defendant: 860 Main Street Extension, Wallingford, CT 06492

Place of Accident, Incident or Transaction: 860 Main Street Extension, Wallingford, CT 06492
(*Use Reverse Side For Additional Space*)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a)) Yes ☑ No ☐

Does this case involve multidistrict litigation possibilities? Yes ☐ No ☑

*RELATED CASE, IF ANY*:
Case Number: ______ Judge ______ Date Terminated: ______

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
Yes ☐ No ☑
2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
Yes ☐ No ☑
3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
Yes ☐ No ☑
4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
Yes ☐ No ☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases*:
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
(Please specify) ______

B. *Diversity Jurisdiction Cases*:
1. ☑ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
(Please specify) ______

## ARBITRATION CERTIFICATION

(*Check Appropriate Category*)

I, Jennifer D. Gould, Esquire, counsel of record do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 9/6/16 [signature] Attorney-at-Law 80988 Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

**I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.**

DATE: 9/6/16 [signature] Attorney-at-Law 80988 Attorney I.D.#

CIV. 609 (5/2012)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| DE LAGE LANDEN FINANCIAL SERVICES, INC. | : | CIVIL ACTION |
| v. | : | |
| REGAN TECHNOLOGIES CORPORATION | : | |
| | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (X)

| 9/6/16 | **Jennifer D. Gould, Esq.** | [signature] |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for Plaintiff** |
| (267) 907-9600 | (267) 907-9659 | Jgould@stark-stark.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**